IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ROBERT GENE ROSS,

    Plaintiff,


v.                                                        CIV  NO. 07 - 73 MV/ACT


TONY MCCORT, WEXFORD HEALTH
SOURCES, INC., and JOE DOE,

    Defendants.


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

    Plaintiff, Robert Gene Ross, is an inmate incarcerated in the New Mexico state prison system. He brought this civil rights action pursuant to 42 U.S.C. §1983 alleging that he was subject to deliberately indifferent medical care while incarcerated at the Western New Mexico Correctional Facility (WNMCF). Specifically he alleges that Defendant Wexford Medical Services, the health services provider at WNMCF, and Defendant Tony McCort, the Health Services Administrator for Wexford at WNMCF, were deliberately indifferent to his serious medical need on September 12, 2006 because the sick call box was taped shut on that day, that he was unable to put in a slip for sick call in the box, and that he was not seen for a complete medical exam until September 14, 2006. Secondly, he alleges that the Defendants were deliberately indifferent to his serious medical need because he was denied a replacement pair of supportive, orthopedic shoes or boots despite documentation of medical necessity. [See

Complaint, Count I, Claims 1 and 2].

The Court finds that the undisputed material facts as demonstrated by the Martinez Report and Plaintiff's Response to the Martinez Report do not establish that Defendants were deliberately indifferent to Plaintiff's medical need on September 12, 13 or 14, 2006 because Plaintiff was not suffering from a serious medical need during that time period. The undisputed material facts demonstrate that Plaintiff's claim of deliberately indifferent medical care, Count I, Claim 1, is neither supported by the facts or by law. Therefore, this Court recommends that summary judgment be awarded in favor of Defendants and against Plaintiff on Count, Claim 1.

The Court also finds that Plaintiff has failed to fully exhaust his administrative remedies as to his claim concerning repairing or replacing his orthopedic shoes. Therefore this claim, Count I, Claim 2, is barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) for failure to fully exhaust available administrative remedies. The Court recommends that Count I, Claim 2 be dismissed without prejudice.

Plaintiff is proceeding *pro se* and *in forma pauperis*. In viewing Plaintiff's *pro se* complaint and numerous pleadings, the Court applies the same legal standards applicable to pleadings drafted by counsel but is mindful that the complaint must be liberally construed. Northington v. Jackson, 973 F. 2d 1518, 1520-21 (10th Cir. 1992). Faced with a rambling, prolix Complaint, multiple attachments and numerous pleadings filed by Plaintiff, the Court ordered a Martinez Report, which was filed on July 12, 2007. [Doc. No. 37]. The purpose of a Martinez Report is to aid the Court in determining whether there are possible legal or factual bases of relief that might be contained in Plaintiff's complaint. Id., at 1521. A Martinez Report is not designed to resolve disputed material issues of fact. Id.

Plaintiff filed a Response to the Martinez Report and a Supplemental Response to the Report, both of which the Court has carefully reviewed. [Doc. Nos. 42 and 43]. While there are disputed issues of fact between Defendant's versions of certain incidents and events and Plaintiff's versions, the disputes do not pertain to the <u>material, dispositive</u> issues of fact. It is for this reason that the Court concludes that there are no disputed material issues of fact as to Count I, Claim 1, and that Defendants are entitled to judgment in their favor as a matter of law.

FINDINGS OF FACT REGARDING PLAINTIFF'S FIRST CLAIM

1. Plaintiff was an inmate at Western New Mexico Correctional Facility (WNMCF) in 2006 and early 2007 until he was transferred to another facility on February 13, 2007. Defendant Wexford Health Sources, Inc. was the medical provider at WNMCF and Defendant Tony McCort was the health services administrator for Wexford at WNMCF during this time.

2. In September, 2006, inmates at WNMCF could request nonemergency medical care by placing their health care request slip (sick call request) in the sick call box at the medical clinic, by giving the sick call request to one of the medical providers directly, or by handing a sick call request to a correctional officer. [Exhibit B002, Martinez Report, Doc. No. 37].

3. When a non-emergency sick call request was received, Wexford responded to the request within twenty-four hours. If the sick call request involved a clinical symptom, Wexford scheduled the inmate for a face to face encounter with a medical provider. [Exhibit B002].

4. Plaintiff injured his eye in a handball accident in late August, 2006, and was seen several times for the injury. [Exhibits A0090-0092].

5. Plaintiff had a follow-up visit with the medical clinic at WNMCF on the morning of

September 12, 2006, for his August eye injury. The nurse noted in her clinic notes that the eye injury was resolved. [Exhibit A0092].

6. Plaintiff also mentioned, at the morning clinic visit, that he was suffering from stomach pain and would like to be seen for this complaint. The nurse responded, and noted in her clinic notes, that he was to turn in a sick call request "as he is not currently on list for Dr. Deming today. Pt. voiced his understanding of sick call." The nurse also noted in her notes, written at the morning clinic visit, that Plaintiff was in no apparent distress at this time. [Exhibit A 0092].

7. Plaintiff states that during this early morning visit on September 12, 2006, he noticed Dr. Deming walking by the clinic's examining room. He tried to wave her down but she would not stop. [Doc.1, Complaint].

8. Plaintiff and at least a couple of the WNMCF correctional employees had noticed a note on the sick call box early on the morning of September 12, 2006. Exactly what the note said and whether the box was taped shut are disputed. [Exhibit B003, C002, E008-0010, E0012, E0014, E0016].

9. Plaintiff states that the note said that sick call requests were not to be put into the box until September 14, 2006 so that the clinic could catch up. [Doc. 1].

10. Defendant McCort states that on September 12, 2006, at approximately 6:35 AM, he noticed a note having something to do with the type of patients that would be treated in the clinic but does not recall the exact wording of the note. He noted that the box was not taped shut. He does not know who put the note on the box. He immediately had the note removed from the box. [Exhibit B 003].

11. Grace Wallace, RN, recalled that the note said something to the effect that medium sick call

would be treated in the morning and that minimum sick call would be treated in the afternoon. At Defendant McCort's direction, she removed the sign at approximately 6:45 AM. [Exhibit C002-003].

12. Plaintiff was able to submit a sick call request by 1:30 PM on September 12, 2006. The record does not reflect how he submitted his sick call request.

13. In his sick call request he stated that, "My stomach is killing me. It hurts bad with pains that make me bend and double over." [Exhibit A0094].

14. The medical clinic spoke with a person from the food services provider at WNMCF who reported that Plaintiff was refusing the bland diet that had been earlier ordered and was eating regular food. This conversation was noted in Plaintiff's medical chart at 1:30 PM and the information was relayed to Grace Wallace, RN, and Donna Deming, M.D. [Exhibit A0093].

15. At 1:48 PM on September 12, 2006, Plaintiff was examined in the clinic by Grace Wallace, RN. Her clinic notes stated, "Inmate was seen earlier today, voices he wanted to be see[n] ... s/c [sick call] slip for stomach problems. [Zero - (symbol for zero)] pain upon palpation, has had a splenectomy, is pointing to this area. Was seen 8/30 for this problem by Dr. Deming. No distress noted." The plan, as noted in her clinic notes, was to see Plaintiff on sick call when scheduled. [Exhibit A0094].

16. There are no notations concerning vital signs on this clinic note. Plaintiff states that his vital signs were not taken during the afternoon visit at the clinic.

17. Grace Wallace, RN, states in her affidavit that based on her education and training, Plaintiff did not have a significant medical emergency at that time. [Exhibit C003].

18. The Defendants state that Plaintiff was scheduled for sick call the following day, September

13, 2006, but that Plaintiff failed to appear. [Exhibits A0095, C003].

19. Plaintiff states that he was not scheduled for sick call on the following day or if he was, that he was never told of his appointment.

20. Plaintiff's appointment was re-scheduled for September 14, 2006, and he was seen at 7:00 AM. His vital signs were taken and noted on the clinic notes. His temperature was 98 degrees and his blood pressure was 110/68. His respiration rate was 20 and his pulse was 64. The clinic notes state, "Inmate offers no C/O [complaints of] stomach or chest pain today. C/O [complains of] chills and a fever. Teaching R/T [regarding treatment] bland diet and taking all meds as ordered. Instructed to drink more H2O daily. Teaching accepted poorly but reinforcement continued. Tylenol 325 mg tabs PO TID x 3 days given for chills and discomfort." [Exhibit A0096].

21. The next sick call request in the Martinez Report was dated September 16, 2006. In that sick call request Plaintiff complained about his orthopedic shoes and arches. Plaintiff wrote that his back and legs were beginning to ache badly. [Exhibit A0097].

22. Plaintiff filed another sick call request about his stomach pains on September 18, 2006, noting that he had been feeling bad for a week and was nauseated. [Exhibit A0098].

23. Plaintiff had an appointment for a telepsych on September 22, 2006, which he attended. But Plaintiff did not wait, according to the clinical notes, for a medical appointment. [Exhibit A0098].

24. Plaintiff had a splenectomy (removal of the spleen) in 1999. Plaintiff was also diagnosed on November 24, 2004 with h. pylori, a bacteria which is now known to be a factor in peptic ulcers. [Response to Martinez Report, Doc. No. 42, pages 45-48]. Defendant Wexford Health Sources

had concluded that Plaintiff often suffered from chronic stomach pains as a result of one or both of these conditions. [See Exhibits A001, A0046, A0091].

25. Defendants acknowledge that Plaintiff exhausted his administrative remedies regarding this claim. [Exhibits E005-0017].

PLAINTIFF'S CLAIM OF CRUEL AND UNUSUAL PUNISHMENT

The allegations of Plaintiff's claim that he suffered cruel and unusual punishment on September 12, 13 and 14, 2006 because the sick call box was taped shut on September 12, because he was unable to put in a slip call request for sick call in the box that day, and because he was not seen for a complete medical exam until September 14, 2006, are rooted in the Eighth Amendment, applicable to the states by the Fourteenth Amendment. It is well established that the Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners because to do so would constitute the infliction of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97 (1976). But to establish a cruel and unusual punishment claim in violation of the Eighth Amendment, the Plaintiff must allege, and eventually prove, acts or omissions by the Defendants sufficiently harmful to evidence deliberate indifference to his serious medical needs. Estelle, supra at 106.

There are two components to an Eight Amendment claim, the objective component and the subjective component. Kikumura v. Osagie, 461 F. 3d 1269 (10th Cir. 2006). To satisfy the objective component, the alleged deprivation or delay in medical treatment must be sufficiently serious to constitute a deprivation of constitutional dimension. Id., at 1292, quoting Self v. Crum, 439 F. 3d 1227, 1230 (10th Cir. 2006). This is to limit claims to those involving

significant suffering.  Kikumura, supra, quoting Mata v. Saiz, 427 F. 3d 745, 753 (10th Cir. 2005).   When, for example, the alleged deprivation is premised on a delay in receiving medical care, the Plaintiff must show that the delay resulted in substantial harm.  Kikumura, supra, at 1292.

To prevail on the subjective component of the deliberate indifference claim the Plaintiff must be able to show that the Defendants knew the Plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to provide medical care or ensure that another provide medical care.  Farmer v. Brennan, 511 U.S. 825, 839-840 (1994).  In short, Plaintiff must allege that the Defendants not only knew that a failure or delay in providing medical care not only subjected Plaintiff to a substantial risk of serious harm, but that the Defendants consciously disregarded this substantial risk of serious harm.  Id., at 839.

PLAINTIFF'S COMPLAINTS REGARDING HIS STOMACH PAINS ON SEPTEMBER 12 - 14, 2006 DO NOT RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION

To meet the objective component of an Eighth Amendment claim, the Plaintiff  must allege and eventually prove that the Defendants were deliberately indifferent to a serious medical need.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Mata v. Saiz, 427 F. 3d 745, 753 (10th Cir. 2005) quoting Sealock v. Colorado, 218 F. 3d 1205, 1209 (10th Cir. 2000).  The alleged harm or injury must be sufficiently serious to implicate the cruel and unusual punishment clause of the Eighth Amendment, meaning that the Defendants' delay or deliberate indifference to Plaintiff's serious medical need must constitute the unnecessary and wanton infliction of pain.  The purpose of this

requirement is to limit claims to significant as opposed to trivial suffering.  Id., at 753.

The medical records contained in the Martinez Report establish that Plaintiff's stomach complaints were not a serious medical need.  There are several factual bases for this finding.  First, when Plaintiff was seen on the afternoon of September 12, 2006, the nurse who examined him found no pain upon palpitations of the stomach.  Her clinic notes state that no distress was noted.  Second, on the following day, September 13, 2006, Plaintiff did not appear at the clinic.  While Plaintiff claims that he did not know he was scheduled for sick call and that is the reason he did not show up, common sense tells the Court that if his stomach pains were a serious medical need, he would have let the clinic know that he was still in pain and needed to be seen and treated.  Plaintiff was well aware of the clinic's system, the sick call request system, and the manner in which he could be seen for medical care.  Plaintiff was no stranger to the medical clinic at WNMCF as can be seen throughout the Martinez Report.  Third, when Plaintiff did show at 7:00 AM on September 14, 2006, at the medical clinic for sick call, he did not even mention his stomach complaints but instead complained of a fever and chills.  Yet his temperature was normal, 98 degrees, and his vital signs were all well within normal ranges.  Fourth, his stomach pains from September 12, 2006, resolved themselves without treatment or medication as can be deduced from the medical records in the Martinez Report.

These four facts establish that the stomach pains that Plaintiff was suffering on September 12, 2006, were not a serious medical need .  The stomach pains did not mandate treatment as diagnosed by a doctor.  Nor was Plaintiff's condition one that even a lay person would recognize as needing a doctor's attention.  Instead of a lay person, a registered nurse examined Plaintiff and determined that he did not need a doctor's attention.  Plaintiff is unable to

meet the objective component of an Eighth Amendment claim for the deliberate indifference to a prisoner's serious medical need. The alleged deprivation of medical care or access to medical care was not sufficiently serious to rise to the level of a constitutional violation. Therefore, Defendants are entitled to summary judgment as a matter of law on Plaintiff's claim that his constitutional rights were violated because the sick call box was taped shut on September 12, that he was unable to put in a request for sick call in the box, and that he was not seen for a complete medical exam for his complaints until September 14, 2006.

### FINDINGS OF FACT REGARDING PLAINTIFF'S SECOND CLAIM

26. Plaintiff has a deformed left foot, a condition with which he came into the correctional system. Before he came into the correctional system in 1999, he owned a pair of orthopedic shoes but they were taken from him at intake. [Exhibit A009].

27. Plaintiff was issued a pair of custom fitted orthopedic shoes on February 9, 2006, but by November, 2006, the shoes were so worn down that Plaintiff needed to have his shoes repaired or be issued a new pair of shoes. [Exhibit A0076, A0100-0105].

28. Defendant Wexford Medical Services, at a collegial review, decided that instead of repairing or replacing the shoes with another pair of orthopedic shoes, Plaintiff would be issued arch supports from Wal-Mart and state provided footwear. [Exhibit A0106]. Plaintiff was issued a cane on November 20, 2006. [Exhibit A0109].

29. On November 27, 2006, the arch supports were on order, but the prison advised Defendant Wexford that it did not have the right size shoes. [Exhibit A0110].

30. Plaintiff received his 3/4 length arch supports on December 15, 2006, as well as an aircast

pneumatic walker and an elastic ankle support. [Exhibits A0113, 0114].

31. On January 9, 10 and 11, 2007, still not having received his state issued shoes, Plaintiff complained of back, left leg and left foot pain and stated that the shoe inserts were not working. His existing shoes were noted to be a poor fit. Plaintiff was told to limit his standing to 2 hours at a stretch with a 15 minute rest or sitting break. He was also given an elastic wrap for his left ankle. [A0121-0123].

31. On February 13, 2007, Plaintiff was transferred to another correctional facility.

32. At WNMCF, the grievance process consists of several steps. In Step 1, the inmate files a written grievance with the Institution's Grievance Officer within twenty days of the incident giving rise to the grievance. In Step 2, the Grievance Officer either accepts the grievance or returns the grievance to the inmate to correct, if possible. Once the grievance is accepted, the grievance moves to Step 3. The Grievance Officer does an investigation within twenty days of the receipt of the grievance and notes his recommendation on the grievance form. [Exhibit E001-002].

33. In Step 4, the Warden or his designee reviews the grievance, any comments from the inmate or staff, and the recommendation of the Grievance Officer. The Warden or his designees then denies, grants, dismisses, resolves or refers the grievance and has it returned to the inmate. Step 4 must be completed within fifteen working days of the Warden's receipt of the investigation and Grievance Officer's recommendation. [Exhibit E001-002].

34. If the inmate is not satisfied with the Warden's resolution of the grievance, the inmate moves to Step 5, the Departmental Appeal. The inmate must appeal the Warden's decision within seven calendar days of receipt of the decision. Step 6 is the Department Decision, the

final step of the grievance process. The entire grievance process is completed within ninety days of the receipt of the grievance from the inmate. [Exhibit E001-002].

35. Plaintiff was familiar with the grievance process at WNMCF as evidenced by his successful completion of the grievance process, including the appeal in Step 5, with his grievance about the denial of medical services on September 12- 14, 2006. [Exhibits E005-0017].

36. Plaintiff filed his initial grievance regarding the denial of new orthopedic shoes on December 4, 2006. The grievance was assigned No. 06-467. [Exhibit E 0018]. In the grievance Plaintiff explained that he just wanted a pair of shoes that fit his particular feet. He complained that the years of not wearing the proper kind of boots have resulted in pain in his foot, leg and back that is now constant.

37. The Grievance Officer, George Garcia, received and accepted Plaintiff's grievance concerning his lack of orthopedic shoes, on December 6, 2006. [Exhibit E0018].

38. Grievance Officer Garcia entered his recommendation on December 13, 2006. "Inmate Ross, I spoke with Mr. Tony McCort, Health Services Coordinator, and he said that he has ordered insoles for you and you can put them in State issue boots. Orthopedic shoes are not medically indicated. I recommend no other action at this time." [Exhibit E0019].

39. The Warden reviewed the recommendation and denied the grievance on December 15, 2006, writing, "concurrence with findings". The grievance form with its resolution was returned to Plaintiff on December 20, 2006. [Exhibit E0019].

40. Plaintiff did not appeal the grievance. [Exhibit E0019].

41. Plaintiff filed another grievance on January 3, 2007, No. 07-015, concerning his inability to get orthopedic boots or shoes. "I now have on a pair of overly run down soft diabetic shoes that

are so worn that they hurt my foot, ankle, leg and lower back to walk on all the time. This has been going on for months and now my foot and leg and back (lower) constantly ache from having to walk so very awkward on the side of my shoes because they are so wore down and run over." [Exhibit A0023-24].

42. Plaintiff acknowledged that this January grievance was a second grievance on the issue of Wexford's decision not to issue him a new or repaired pair of orthopedic shoes. "This is my second grievance on the issue. The fact that a half shoe heel insert does not work and is obviously 'no' solution or remedy to the fact that I need a pair of boots, a new pair of shoes ... This is my second and final grievance." [E0025].

43. Grievance Officer Garcia received the grievance on January 8, 2007 but would not accept it for consideration because it has already been answered in Grievance No. 06-467. [Exhibit E0023]. Since it was not accepted into the grievance process, it was not investigated and the Grievance Officer did not write a recommendation. Nor was it sent to the Warden for decision. [Exhibit E0026].

44. Nonetheless Plaintiff appealed the grievance on January 12, 2007. The form was sent to the Grievance Coordinator on January 18, 2007. [Exhibit E0026].

45. Deputy Secretary of Operations Erma Sedillo responded on March 30, 2007, explaining that the matter was not grievable because the issue had been addressed and resolved in Grievance No. 06-46. "CD-150500 states that the following matter is not grievable by inmates: The subject of any prior grievance on which a final determination has been made ... This issue has already been answered and is not grievable." [Exhibit E0022].

## PLAINTIFF HAS NOT EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Every prisoner who brings a civil rights action challenging prison conditions in federal court must first meet the mandatory exhaustion requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  The PLRA requires that a prisoner must exhaust available administrative remedies before filing a civil rights action.  Even if the remedies available to the prisoner appear to be futile, the prisoner must use and exhaust the available remedies.

Plaintiff failed to appeal his grievance filed in December, 2006, to its conclusion.  "An inmate who begins the grievance process but does not complete it is barred from pursing a §1983 claim under PLRA for failure to exhaust his administrative remedies."  Jernigan v. Stuchell, 304 F. 3d 1030, 1032 (10th Cir. 2002).  Exhaustion is mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The failure to appeal the December, 2006 grievance means that Plaintiff failed to exhaust the available remedies and is therefore barred from pursuing this claim.

Plaintiff argues that the primary purpose of the administrative remedy is to give notice of the problem to the correctional facility.  Plaintiff, however is mistaken.  In 1996, Congress amended 42 U.S.C. § 1997e making exhaustion mandatory.

Plaintiff also argues that Grievance No. 06-467 was answered to a resolution and could not be appealed or it was not necessary because the answer seemed favorable.  But an examination of Grievance No. 06-467 shows that first, the resolution was not favorable to the Plaintiff, and secondly, that Plaintiff was able to appeal the grievance, even if he thought the final resolution would not be favorable to him.

Plaintiff lastly argues that he was prevented from appealing his grievance to the highest level when he was transferred out of WNMCF.  But Plaintiff was not transferred until February

13, 2007. The appeal time for Grievance No. 06-467 began to run on December 20, 2006 and continued for seven calendar days. Instead of appealing the adverse decision, Plaintiff chose to wait a couple of weeks and file a subsequent, duplicate grievance. Having failed to exhaust his available administrative remedies as to the claim that he was denied replacement of or the repair of his orthopedic shoes or boots in November, 2006, Plaintiff is barred from pursuing that claim in this lawsuit.

## CONCLUSION

The Court recommends that summary judgment be granted in favor of the Defendants on Count I, Claim 1 because the undisputed material facts establish that Plaintiff was not suffering from a serious medical need from September 12 through 14, 2006. Therefore, Plaintiff did not suffer a violation of his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment.

The Court recommends that Count I, Claim 2 be dismissed without prejudice because the Plaintiff failed to exhaust his available administrative remedies. Having failed to appeal the grievance decision from Grievance No. 06-467, Plaintiff is barred from bringing this claim in this lawsuit.

The Court recommends that judgment be entered in favor of the Defendants on both counts and that the case be dismissed, with prejudice as to Count I, Claim 1 and without prejudice as to Count I, Claim 2.

NOTIFICATION

THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1). A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE